O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE DEBTOR: KATHLEEN KELLOGG-TAXE; KATHLEEN KELLOGG-TAXE; RONALD TAXE; JOHN SABA; GREGORY GRANTHAM, | ) ) ) ) ) | Case No. CV 15-00084 DDP<br><br>[2:12-bk-51208 RN]<br>[2:13-ap-01781 RN] |
| Plaintiffs, | ) ) | **ORDER DENYING APPEAL AND AFFIRMING BANKRUPTCY COURT'S SANCTIONS** |
| v. | ) ) ) | |
| CAROLYN A. DYE, CHAPTER 7 TRUSTEE, | ) ) ) | [Dkt. Nos. 2, 24] |
| Defendant. | ) ) ) ) ) ) | |
| _____ | ) | |

Presently before the Court is Debtor Kathleen Kellogg-Taxe's appeal from the Bankruptcy Court's December 19, 2014, Order Granting Chapter 7 Trustee's Motion for Sanctions Pursuant to 11 U.S.C. § 105(a) ("Order"). Having considered the parties' submissions, the Court adopts the following Order.

cc: US Bankruptcy Court & US Trustee's Office

1    I.    **BACKGROUND**

2         The facts of this case are quite convoluted, as the parties

3    and the Bankruptcy Court have noted.  (<u>See</u> Order at 3; Appellant's

4    Opening Brief at 4-5; Appellee's Reply Brief at 1-2.)  This factual

5    complexity is, however, driven primarily by what the Bankruptcy

6    Court termed a "family fraud."  (Order at 14.)  That is to say, the

7    facts are only complex in so far as they tell the long and winding

8    story of the Taxe family's fraudulent lien on their own property,

9    which was meant to shield the property from creditors.  (<u>Id.</u> at 3-

10   12; <u>see also</u> Appellant's Opening Brief at 4-8 (statement of facts);

11   Appellee's Reply Brief at 4-19 (same).)  The Bankruptcy Court and

12   the parties have explained the story in detail after many hearings

13   and much briefing, so the Court does not labor over the details

14   here.

15        On appeal before this Court is the Bankruptcy Court's Order

16   granting the Chapter 7 Trustee's motion for $150,000 in sanctions

17   jointly and severally against the Debtor Kathleen Kellogg-Taxe,

18   Debtor's brother-in-law Ronald Taxe, and attorneys for Kellspin,

19   Inc., Gregory Grantham and John Saba.  Kellspin is a closely held

20   company of the Taxe family that was alleged to hold a senior lien

21   on real property owned by the Debtor at 10535 Vestone Way, Los

22   Angeles, California ("Vestone Property").  (Order at 2.)

23        The Trustee's sanction motion arose out of litigation in the

24   Bankruptcy Court about the Vestone Property.  Debtor filed Amended

25   Schedules in her Chapter 7 bankruptcy (Debtor's fifth bankruptcy)

26   that disclosed for the first time "an undisputed secured claim of

27   $1,465,815" for Kellspin as assignee of a judgment lien from the

28   Omni Group.  (<u>Id.</u> at 9; Amended Schedules.)  Debtor asserted in the

bankruptcy proceeding that the Vestone Property was subject to Kellspin's lien, and that the lien was senior to the liens recorded by First Federal Bank, Countrywide Financial, and Astoria Federal Savings on the same property.  (See Order at 9.)  Debtor filed a Proof of Claim for Kellspin, which Kellspin later amended when it filed its own Proof of Claim.  The Kellspin lien was not disclosed in any prior bankruptcy or in the applications for loans from First Federal Bank, Countrywide Financial, and Astoria Federal Savings. (Id. at 7-9.)

Investigation into the alleged Kellspin lien led to the Trustee filing an adversary proceeding in the Bankruptcy Court to quiet title to the Vestone Property.  Kellspin filed an Answer claiming that Kellspin had a secured, first priority lien against the Vestone Property.  (Id. at 9-10.)  Back in the bankruptcy proceeding, Debtor fought the Trustee's motions for access to the property, to employ a broker to sell the property, and to sell the property free and clear of liens.  Debtor alleged that these actions could not be taken because of the Kellspin lien.  (Id.)

In the end, several courts — state and federal bankruptcy courts — have found the Kellspin lien to be fraudulent and that the actions taken by the Kellspin attorneys and the Taxe family in defense of that lien have all been in the knowing service of that fraud.  (Id. at 10-12, 14.)  The Trustee sought sanctions against Debtor, Ronald Taxe, Gregory Grantham, and John Saba for their conduct in relation to the lien.  (Id. at 12.)  The Bankruptcy Court granted the motion.

All the sanctioned parties appealed the Order.  (Dkt. No. 2.) This Order only reviews Debtor's appeal, however, because John Saba

1  and Gregory Grantham never filed an appeal brief, and Ronald Taxe's
2  late and oversized brief was struck from the docket pursuant to
3  Trustee's unopposed motion. (<u>See</u> Dkt. No. 45.)

4

5  **II.   LEGAL STANDARD**

6       The Bankruptcy Court's findings of fact are reviewed under the
7  clearly erroneous standard and conclusions of law are reviewed de
8  novo. <u>In re Brown</u>, 235 B.R. 644, 646 (Bankr. C.D. Cal. 1999); <u>see</u>
9  <u>also In re Lazar</u>, 83 F.3d 306, 308 (9th Cir. 1996).  Awards of
10 sanctions are reviewed for an abuse of discretion. <u>In re Lehtinen</u>,
11 564 F.3d 1052, 1058 (9th Cir. 2009).

12 **III. DISCUSSION**

13      The sole issue on appeal is the Bankruptcy Court's imposition
14 of sanctions against Debtor.  Debtor's brief states six issues on
15 appeal, but all six ask the question of whether the Bankruptcy
16 Court abused its discretion in sanctioning Debtor. (Appellant's
17 Opening Br. at 3.)

18      Debtor argues that she was not a party to the adversary
19 proceeding to quiet title to the Vestone Property and so she cannot
20 be sanctioned for actions taken in that suit. (<u>Id.</u> at 9-10.)  She
21 also argues that the Bankruptcy Court's award of sanctions under 11
22 U.S.C. § 105 was improper and excessive, and that any sanction
23 should have been under Federal Rule of Bankruptcy Procedure 9011,
24 which is equivalent to Federal Rule of Civil Procedure 11. (<u>Id.</u> at
25 10-12, 22-26.)  Debtor further claims that the Bankruptcy Court
26 erroneously based its ruling on a statutory section limiting a co-
27 creditor filing a proof of claim for another creditor, instead of a
28 *debtor* filing a proof of claim for a creditor. (<u>Id.</u> at 13-22.)

4

1    The Trustee responds that sanctions are available to the

2 Bankruptcy Court under both Rule 9011 and Section 105(a), and that

3 the use of Section 105(a) was proper here.   (Appellee Reply Br. at

4 19-21.)   She argues that the sanctions were meant for both the

5 Debtor's behavior in her bankruptcy proceeding as well as Ronald

6 Taxe's and the Kellspin attorneys' acts in the adversary

7 proceeding, thus it does not matter that Debtor was not a party to

8 the adversary proceeding.   (Id. at 21-22.)   As for the proof of

9 claim, at no point, the Trustee says, did the Bankruptcy Court

10 state that Debtor could not file a proof of claim for a creditor —

11 it simply found that Debtor's doing so was in bad faith.   (Id. at

12 22-23.)   Lastly, the Trustee argues that Debtor failed to show that

13 the Bankruptcy Court's finding of bad faith was clearly erroneous.

14 (Id. at 23.)

15 **A.   Section 105 versus Rule 9011**

16    A bankruptcy court has sanctioning power under both Section

17 105 and Rule 9011, but the two statutes entail different standards.

18 Rule 9011 is modeled after Federal Rule of Civil Procedure 11,

19 which means it is a limited sanctioning power for attorneys or

20 unrepresented parties that make misrepresentations to the court.

21 See Fed. R. Bankr. Pro. 9011; Fed. R. Civ. P. 11.   The Rule

22 requires that a party to be sanctioned receive notice and a

23 reasonable opportunity to correct the misrepresentation before

24 sanctions are granted.   Fed. R. Bankr. Pro. 9011.

25    By contrast, 11 U.S.C. § 105(a) contains a broad grant of

26 inherent power:

27         The court may issue any order, process, or judgment that is
          necessary or appropriate to carry out the provisions of

28        this title.   No provision of this title providing for the

5

1        raising of an issue by a party in interest shall be
      construed to preclude the court from, sua sponte, taking
2        any action or making any determination necessary or
      appropriate to enforce or implement court orders or rules,
3        or to prevent an abuse of process.

4  11 U.S.C. § 105(a).  This broad grant of power includes the ability

5  to sanction bad faith conduct conducted in bankruptcy courts by a

6  party, a non-party, and attorneys.  See, e.g., In re Rainbow

7  Magazine, Inc., 77 F.3d 278, 284 (9th Cir. 1996) ("There can be

8  little doubt that bankruptcy courts have the inherent power to

9  sanction vexatious conduct presented before the court." (citing 11

10 U.S.C. § 105(a))).  However, in In re Dyer, 322 F.3d 1178, 1196

11 (9th Cir. 2003), the Ninth Circuit explained that there is a

12 difference between the civil contempt power of bankruptcy courts

13 under 11 U.S.C. § 105(a) and the inherent sanctioning power of

14 courts, and that earlier decisions of the Circuit had confused the

15 two.  Since the issue in this case is about bad faith litigation

16 conduct, which could be upheld under either the inherent

17 sanctioning power or 11 U.S.C. § 105(a), this Court will not focus

18 on this jurisprudential point of difference.

19     Here, the Trustee alleged, and the Bankruptcy Court found, bad

20 faith conduct by Debtor, Ronald Taxe, and the Kellspin attorneys in

21 the various proceedings that involved the Vestone Property and the

22 fraudulent lien.  Therefore, contrary to Debtor's assertions, the

23 use of Section 105 and/or the inherent sanctioning power instead of

24 Rule 9011 was appropriate in this case because Debtor was involved

25 in litigation concerning the fraudulent lien and took actions in

26 that litigation that the Trustee alleged were in bad faith.

27 ///

28 ///

**B.   Bad Faith**

Debtor argues that her conduct in asserting the existence and validity of the Kellspin lien was in good faith and thus not sanctionable. (Appellant's Opening Br. at 13-17, 24-25; Appellant's Reply Br. at 4-5.)   The Trustee argues that the Bankruptcy Court considered Debtor's argument that she filed the proof of claim for Kellspin in good faith based on her title report investigation and the Bankruptcy Court properly found this argument unpersuasive. (Appellee's Reply Br. at 21-22.)   The Trustee details the entire course of conduct that the Bankruptcy Court found as evidence of Debtor's involvement in the fraudulent scheme and of Debtor's bad faith. (Id. at 23-27.)

"The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." In re Dyer, 322 F.3d 1178, 1196 (9th Cir. 2003).   The bankruptcy court must "make an explicit finding of bad faith or willful misconduct" in order to exercise its inherent sanctioning power.   Id.   The standard for bad faith or willful misconduct is "something more egregious than mere negligence or recklessness."   Id.   For bad faith, there must be some kind of "improper purpose" or intent, and "even if the act consists of making a truthful statement or a non-frivolous argument or objection," there can be sanctionable conduct based on the bad faith.   Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001).

In this case, the Bankruptcy Court found Debtor engaged in bad faith litigation conduct in her bankruptcy proceeding.   The Bankruptcy Court found that Debtor applied for multiple loans without disclosing the alleged Kellspin lien as encumbering the

Vestone Property.  Order at 7-8.  Further, Debtor filed four prior
Chapter 13 bankruptcy cases, none of which disclosed the Vestone
Property as being encumbered by the Kellspin lien.  Id. at 8-9.
The Kellspin lien was only disclosed in the current Chapter 7
bankruptcy proceeding, and only in Debtor's amended schedules.  Id.
at 9.  Debtor used this lien to object to any proposed creditor
settlement or action taken by the Chapter 7 Trustee that would
dispose of the Vestone Property because Debtor claimed this lien
was undisputed and senior to all the other liens on the home.  Id.
As the Bankruptcy Court noted, Debtor filed a proof of claim for
Kellspin in order to thwart the Trustee's attempt to sell the
Vestone Property clear of any liens.  Id.  Even after the Trustee
filed a separate adversary proceeding in the Bankruptcy Court to
quiet title to the Vestone Property against Kellspin with evidence
that the lien was fraudulent, Debtor continued to use the Kellspin
lien to fight against any action taken by the Trustee to sell the
home.  Id. at 10.

Based on these facts, and others as described in the Order,
the Bankruptcy Court found "that Richard Taxe, Debtor, and Ronald
Taxe participated in perpetuating a scheme that has been found to
be fraudulent by several state court rulings since 1994, when the
state court in the Fernandez v. Ronald Taxe, et al. case found the
Omni Group Judgment was part of a fraudulent scheme and therefore
void."  Order at 14.  The Bankruptcy Court found Debtor knowingly
engaged in bad faith by filing several documents "including at
least four oppositions/objections" that relied on the fraudulent
lien even though "a review of state court records would [have]
reveal[ed] that the judgment ha[d] been extinguished."  Id. at 14.

8

1  Most revealingly, the court found that Debtor's filing of a proof

2  of claim on Kellspin's behalf asserting the lien despite Debtor

3  hiding such a lien in prior bankruptcies was in bad faith, and was

4  unnecessary as "Debtor d[id] not personally appear to be liable for

5  the underlying judgment" for the Kellspin lien.  Id. at 14-15.

6  Thus, there was no benefit to the bankruptcy estate in disclosing

7  the lien or in filing a proof of claim, other than to attempt to

8  thwart the sale of the Vestone Property in settling other debts

9  that the Debtor was most certainly personally liable for.  See id.

10  at 15-16.

11      The Bankruptcy Court expressly held that Debtor's conduct as

12  alleged was in bad faith:

13        Because the Debtor failed to initially disclose the
          existence of Kellspin's lien in her schedules; because she
14        filed a very detailed but false proof of claim; and because
          she blindly condoned and/or participated in the fraudulent
15        attempts to advance the validity of the lien during the
          course of this case after it had been declared invalid by
16        several courts; this Court finds that the Debtor's actions
          were done in bad faith with the intent to perpetuate a
17        fraudulent scheme to the creditors of this estate and to
          this Court.
18
   Id. at 16.  Thus, based on this finding of fact and application of
19
   the law to these facts, the Bankruptcy Court granted the Trustee's
20
   motion for sanctions against the Debtor.
21
       Debtor's argument that she was not a party to the adversary
22
   proceeding where the legitimacy of the Kellspin lien was determined
23
   and thus should not be sanctioned fails because as described above,
24
   the conduct sanctioned relates to Debtor's conduct in her
25
   bankruptcy proceeding.  (See Appellant's Opening Br. at 9-10.)  And
26
   most importantly, Debtor's argument that she filed the proof of
27
   claim for Kellspin "in good faith and after a reasonable
28

investigation and review of the title records" was properly found
by the Bankruptcy Court to not be true.  The factual findings of
the Bankruptcy Court are not clearly erroneous based on the record
developed.

Debtor attempts to use Bankruptcy Code Section 501(c) to
demonstrate that she legally could make a proof of claim on behalf
of a creditor.  (Appellant's Opening Br. at 17-19.)  Thus, she
claims, the Bankruptcy Court made an error of law because it found
that her filing a proof of claim was part of her bad faith conduct
but it was expressly allowed under the Bankruptcy Code.

Section 501(c) does allow a debtor to file a proof of claim
for a creditor.  11 U.S.C. § 501(c).  However, as the Bankruptcy
Court in this case noted, Kellspin was not a creditor of the
Debtor, so under Sections 501 and 502, there were no grounds for
the Debtor to file that proof of claim.  <u>See</u> <u>id.</u> §§ 501, 502.
Debtor's point that the Bankruptcy Court was focused on the section
relating to another creditor filing a proof of claim on behalf of a
creditor who failed to do so is inapposite.  Debtor was not in debt
to Kellspin, and the Kellspin lien was not a personal obligation to
be discharged in bankruptcy.

Lastly, Debtor's further arguments that she made "an
objectively reasonable inquiry" into the Kellspin lien fail to
engage with the abuse of discretion and clearly erroneous standards
of review that control this appellate review.  (<u>See</u> Appellant's
Opening Br. at 14-15.)  The Bankruptcy Court found that Debtor and
her family were using the Kellspin lien in furtherance of a fraud,
that Debtor knowingly filed a proof of claim that was false and
unsupported by the state court record, and that this conduct

1    amounted to bad faith.  This Court can review the Bankruptcy

2    Court's findings only under the abuse of discretion and clearly

3    erroneous standards, and based on the facts found and the reasoning

4    of the Bankruptcy Court, this Court cannot find that Debtor's

5    arguments overcome this high standard.

6         **C.   Amount of Damages**

7         Debtor argues that the amount of sanctions imposed are

8    disconnected from any compensatory or deterrence justification and

9    are instead motivated by an attempt to get attorneys' fees where

10   none are warranted and to coerce settlement.  (Appellant's Opening

11   Br. at 22-26; Appellant's Reply Br. at 9-10.)  The Trustee responds

12   that the Bankruptcy Court was presented with evidence regarding the

13   fees Trustee's attorneys incurred based on the litigation

14   surrounding the fraudulent Kellspin lien.  (Appellee's Reply Br. at

15   28-29.)  Thus, the Trustee argues, the amount of the sanctions was

16   based on compensatory damages as well as deterring future bad

17   conduct.  (Id.)

18        The amount of damages imposed in an inherent sanction

19   authority or Section 105 case is limited to compensatory damages —

20   the Ninth Circuit has found Bankruptcy Courts and the procedures

21   they follow do not provide sufficient procedural safeguards for

22   imposing punitive damage awards.  In re Dyer, 322 F.3d at 1197.

23        Here, the Bankruptcy Court awarded $150,000 jointly and

24   severally in sanctions against Debtor, Ronald Taxe, John Saba, and

25   Gregory Gantham.  John Saba, however, had the option of paying

26   $10,000 out of his own funds to be released from the remainder of

27   the sanction award.  Order at 19 n.9.  This amount must be

28   justified by the purpose of compensating the Court and the Trustee

1   for the bad faith conduct of these parties.  The Trustee presented

2   evidence to the Bankruptcy Court that "the fees of her attorneys in

3   the effort to combat the fraudulent Kellspin claim were in the sum

4   of $361,595." (Appellant's Br. at 29.)  These fees were not

5   limited to solely the adversary proceeding, but also included fees

6   from the bankruptcy proceeding itself.  (<u>Id.</u>)  Thus, the amount

7   awarded in sanctions is not an abuse of discretion considering the

8   amount of time and work required by the Trustee to fight the

9   fraudulent lien and the conduct committed by the parties.

10  **IV.   CONCLUSION**

11       For all the reasons discussed above, this Court DENIES Debtor

12  Kathleen Kellogg-Taxe's appeal and AFFIRMS the award of sanctions.

13

14  IT IS SO ORDERED.

15

16

17  Dated: December 7, 2015

18                                   DEAN D. PREGERSON
                                     United States District Judge

19

20

21

22

23

24

25

26

27

28